In re Bill L. DeLISLE, Debtor.

**CITIZENS AND SOUTHERN NATIONAL BANK, Plaintiff,**

v.

**Bill L. DeLISLE, Defendant.**

**and**

**SOUTHEAST BANK, Plaintiff,**

v.

**Bill L. DeLISLE, Defendant.**

**Bankruptcy No. 90–3707–9P7. Adv. Nos. 90–397, 90–398.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Feb. 22, 1991.

Henry Andreasen, for plaintiff.

Kim Levy, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is the dischargeability vel non of debts owed to the Plaintiffs, Citizens & Southern National Bank (C & S) and Southeast Bank (Southeast) by the Defendant, Bill L. DeLisle (Debtor). It is the contention of both C & S and Southeast that the Debtor's debts owed to them are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) because the Debtor allegedly falsified his income or employment status on credit card applications submitted to the Plaintiff banks. The Court heard testimony and considered the documentary evidence in the record, and finds the following to be the relevant evidentiary facts.

The Debtor is a self-employed lawn maintenance man and earned approximately $32,000 in 1988 and 1989. However, after the Christmas freeze of 1989, his business dramatically decreased, and his income was reduced to approximately $1,000 a month. In February 1990, the Debtor's tractor engine was ruined, and the repair cost was $900.00. One month later, the Debtor lost a major account from which he earned $6,000.00 per year.

In January 1990, the Debtor indicated on the pre-approved credit card application from C & S that he earned between $35,000 and $45,000 per year. (Plaintiff's Exh. No. 1, Case No. 90–397). The Plaintiff based this figure on his 1989 earnings of $32,000, to which he added his mother's income of $13,000. The Debtor included his mother's income on his credit card application because she moved into his home in June of 1989. In March 1990, the Debtor took a $1,400 cash advance on the C & S credit card, which had a credit limit of $1,500.

On the Southeast credit card application, the Debtor stated that his annual income was $45,000 and that he was retired. Again, the Debtor was including his income, as well as his mother's income. (Plaintiff's Exh. No. 1, Case No. 90–398). The Debtor took a $3,000 cash advance on his Southeast card, which had a credit line of $3,000. In March 1990, the Debtor submitted a new loan application to C & S in order to buy a lawnmower for $8,474. Although the Debtor already had a lawnmower valued at $10,000, he could not afford the $900 engine repair bill and therefore could not get the lawnmower back from the repair shop. However, he determined that he could afford the monthly payments of $236 on a new lawnmower, so he got a new one.

In early 1990, the Debtor was earning $1,000 per month and his living expenses totaled approximately $800 per month. In addition, he had monthly payments of $543 for credit cards, a truck loan, and a loan from his stepfather. The Debtor used part of his cash advance to pay the truck loan and the loan from his stepfather in full, thus reducing his monthly payments to $135. However, when the Debtor purchased the new lawnmower, his payments increased by an additional $230 per month.

In essence, the Debtor took cash advances on the credit cards in an attempt to consolidate some of his loans. Before this "consolidation", the Debtor's debts included $3,200 owed on the truck, $1,200 owed to his stepfather, and $900 for lawnmower

repair, for a total of $5,300. His monthly payments on these obligations, excluding the lawnmower, totalled $543. After the "consolidation", the Debtor owed $3,000 to Southeast, $1,440 to C & S, and $8,500 for the new lawnmower, or a total of $12,940. The monthly payments to Southeast and C & S totalled $135, and the lawnmower payment was $236. In total, the Debtor's payments after consolidation come to $371.

The Plaintiffs seek a determination that the debts owed by the Debtor to the Plaintiffs are nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code which provides in pertinent part as follows:

§ 523. **Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition; . . . .

C & S contends that the Debtor's debt to it should be declared to be nondischargeable because the Debtor made an allegedly false representation on the credit card application concerning his income. Similarly, Southeast contends that the Debtor's debt to it should be declared to be nondischargeable because the Debtor made an allegedly false representation on the credit card application concerning both his income and employment status.

■ The overriding purpose of the Bankruptcy Code is to release the Debtor from the burden of his indebtedness and provide him with a new opportunity in life, free from the pressures of pre-existing debt. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Although the language of § 523 does not dictate the standard of proof for exceptions to discharge, the Supreme Court has determined that the preponderance of the evidence standard of proof is appropriate in cases under § 523(a) of the Bankruptcy Code. *In re Garner*, 73 B.R. 26 (Bankr.W.D.Mo.1987), rev'd, 881 F.2d 579 (8th Cir.1989), *rev'd.*, — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Thus, the Supreme Court has rejected the argument that the clear-and-convincing standard is required to give effect to the "fresh start" policy of the Bankruptcy Code. *Id.*

■ In order to prevail in a case under § 523(a)(2)(A) of the Bankruptcy Code, a plaintiff must prove that the debtor's conduct involved actual fraud—either moral turpitude or intentional wrong on the debtor's part. *In re McAdams*, 11 B.R. 153 (Bankr.Vt.1980). Fraud that is only implied in law, that is, fraud which exists without bad faith, is insufficient. *Id.*

■ The elements required to except a debt from the general provisions of the discharge under § 523(a)(2)(A) are as follows:

(1) the debtor made representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Edwards*, 67 B.R. 1008 (Bankr.D. Conn.1986); *In re Fosco*, 14 B.R. 918 (Bankr.D.Conn.1981).

■ This Court is satisfied that there is no evidence to prove the Debtor made representations about his income with the intention to deceive or knowing they were false. Instead, this Court finds the Debtor's testimony that he based his income on earnings from the past two years, to which he added his mother's income, to be credible. Additionally, in light of the fact that C & S gave the Debtor a preapproved credit card application, C & S cannot argue that it relied on the Debtor's representations in extending credit to the Debtor. Thus, the Complaint of C & S should be dismissed with prejudice.

■ Likewise, this Court is satisfied that Southeast failed to meet its burden of proof in its case against the Debtor. Surely, Southeast cannot argue that it relied on the Debtor's Statement that he was retired in extending credit to the Debtor. In sum, this Court is satisfied that the Complaint of Southeast against the Debtor should also be dismissed.

A Separate Final Judgment will be entered in accordance with the foregoing.