**In re Julio RODRIGUEZ, Debtor.**

**CITIBANK (SOUTH DAKOTA), N.A., Plaintiff,**

**v.**

**Julio RODRIGUEZ, Defendant.**

**Bankruptcy No. 91–12201–BKC–AJC. Adv. No. 91–0771–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

Jan. 27, 1992.

Darrell Payne, Coll Davidson Carter Smith Salter & Barkett, P.A., Miami, Fla., for plaintiff.

Luis A. Fors, Miami, Fla., for debtor.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge, Sitting by Special Designation.

This matter arose by complaint filed on August 19, 1991, in which Citibank (South Dakota), N.A., (Citibank), seeks a determination of the dischargeability of debt owing to it by the Debtor, Julio Rodriguez (Debtor). Citibank alleges that Rodriguez obtained credit and cash advances by false pretense, and is therefore excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

Trial was held before the undersigned sitting by special designation on January 13, 1992. From the joint stipulation of facts, the evidence produced at trial, and the candor and demeanor of the witness, the facts as material to the issue are as follows:

### Findings of Fact

The Debtor worked for Faith Freight as a messenger since February 1990 and for the past two years, 1990 and 1991, earned an annual gross income of $12,000.00. His monthly take home salary was $790.00 (excluding his spouse's monthly income of $520.00), and monthly expenses were $2,140.00. He has no other source of income nor does he anticipate any significant increase in his income.

Citibank issued two credit cards and extended credit to the Debtor under a Citibank Visa credit card (account no. 4128 188 516 814) and a Citibank Mastercard credit card (account no. 5424 800 6378 6161), wherein the Debtor agreed to make certain minimum payments on any outstanding balances on the accounts. The credit limit for each account was $6,000.00. In March 1991, approximately two months prior to his bankruptcy filing on May 15, 1991, the Debtor began obtaining cash advances under each of the accounts as follows:

| Date | Amount | Credit Card |
| --- | --- | --- |
| March 7 | $1,700 | Visa |
| March 25 | 250 | Visa |
| April 11 | 3,567 | Visa |
| April 11 | 2,200 | Mastercard |
| | $7,717 | |

According to the March 7, 1991 Visa statement, the Debtor had an outstanding balance of $416.84, excluding the $1,700.00 cash advance made on said date. In the March 22, 1991 Mastercard statement, $2,964.83 was still owing to Citibank. The Debtor was unable to recall how he spent the $5,767.00 cash advances acquired on April 11, 1991. By April 1991, the Debtor had failed to make the minimum payments as required under the credit agreements and failed to repay the balance due under each of the accounts; up until that point he had made payments to Citibank on a fairly regular basis. The final cash advances on April 11, 1991, brought the Debtor's accounts to just over his credit limit on the Visa card and just below the limit on his Mastercard. Citibank discontinued his credit card privileges because both credit card accounts were past due, and also because the Visa account exceeded the credit limits. The total balance owing to Citibank is $11,706.65 ($6,253.94 from the Visa account and $5,452.71 from the Mastercard account).

### Conclusions of Law

Citibank relies upon 11 U.S.C. § 523(a)(2)(A) to establish that the Debtor made false pretenses in obtaining the $11,706.65 debt obligations owing to it. Citibank also refers to the presumption set forth in 11 U.S.C. § 523(a)(2)(C) to aid its determination that the Debtor's debts are not dischargeable. The relevant statutory language provides as follows:

§ 523. **Exceptions to discharge.**

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition;

(C) for purposes of subparagraph (A) of this paragraph, . . . cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; . . .

■ Although the Debtor admits to having received the cash advances totaling $7,717.00, such advances were made more than twenty days before his bankruptcy filing. Hence, Citibank has failed to establish its right to any presumption that such advances are nondischargeable. Without this presumption Citibank can only prevail by showing by a preponderance of the evidence that the Debtor obtained the cash and purchases by false pretenses pursuant to section 523(a)(2)(A). *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ This circuit has stated that in order to find a debt nondischargeable under section 523(a)(2)(A) Citibank must prove the following:

1. That the debtor made a false representation with the purpose and intent of deceiving the creditor;

2. That the creditor relied on the representation;

3. That the creditor's reliance was reasonably founded;

4. That the creditor sustained a loss as a result of the representation.

*In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986).

As in most cases where credit cards are involved, the most difficult element to prove relates to the intent to deceive. The other elements in the instant case appear to have been satisfied; the Debtor has used his credit cards and Citibank relied upon the use as a representation that the Debtor could and would pay his debt obligations. *Matter of Stewart,* 91 B.R. 489, 494 (Bankr.S.D.Iowa 1988) (using a credit card is an implied representation to the issuer

that the debtor has both the ability and intention to pay for the purchases and advances). *See also, Matter of Lay,* 29 B.R. 258 (Bankr.M.D.Fla.1983); *Matter of Artrip,* 27 B.R. 54 (Bankr.M.D.Fla.1983). Additionally, discharge of the debt obligation would result in a loss.

The Eleventh Circuit has considered the question of nondischargeability based on misuse of credit cards and noted that, "The element of risk is inherent in the issuance of bank credit cards. Our 'credit-card economy' encourages widespread voluntary risktaking on the part of those issuing cards. . . . Banks are willing to risk nonpayment of debts because the risk is factored into the finance charges." *First National Bank of Mobile v. Roddenberry,* 701 F.2d 927, 932 (11th Cir.1983). While this court acknowledges the circuit court's concern, it does not believe such risks are applicable where fraudulent use of credit cards are involved. *See e.g., In re Dorsey,* 120 B.R. 592, 595–96 (Bankr.M.D.Fla.1990).

■ Factors courts have considered in determining whether a debtor intends to repay the charges and cash advances are as follows:

1. The length of time between the charges and the filing of bankruptcy;

2. Whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges;

4. The amount of the charges;

5. The financial condition of the debtor when charges were made;

6. Whether the charges exceeded the credit limit of the account;

7. Whether there were multiple charges on the same day;

8. Whether the debtor was employed;

9. The financial sophistication of the debtor;

10. Whether the debtor's spending habits suddenly changed;

11. Whether the purchases were made for luxuries or necessities.

*In re Nogami,* 118 B.R. 846 (Bankr. M.D.Fla.1990). *See also, In re Hinman,* 120 B.R. 1018 (Bankr.D.N.D.1990).

■ The Debtor generally denies that he had any intent to deceive Citibank when he obtained the cash advances. This court disagrees. At the time the Debtor made the various cash advances in question, his monthly take home income was only $790.00 and expenses were $2,140.00. It is obvious that the Debtor's salary was not sufficient to meet his current financial obligations given his expenses were almost three times greater than his income, let alone the obligations incurred from the cash advances. There's no question that he was fully aware of this fact. It is inconceivable how the Debtor could honestly believe that he could repay the cash advances given his financial situation. Furthermore, it is clear that the Debtor was cognizant that he had no likelihood of substantially increasing his salary. With this knowledge, the Debtor nevertheless obtained cash advances in March and April, totaling $7,717.00, specifically acquiring $5,767.00 in one day which is approximately one-half of his annual income. Accordingly, this court is convinced that when the Debtor obtained the various cash advances through the use of the credit cards issued by Citibank, he knew that he did not have the present ability nor the future realistic possibility to pay off the debts incurred. Such conduct establishes the elements of false pretense with the intent to deceive. There can be no doubt that Citibank relied on those false claims in continuing to extend credit, and discharge of those obligations would be a loss. Therefore, based on the foregoing this court must find that the cash advances obtained by the Debtor in the amount of $7,717.00 are nondischargeable.

■ While the $7,717.00 cash advances are deemed nondischargeable, this court believes the remaining debt balance owing to Citibank is, however, dischargeable. Citibank alleges that the items charged by the Debtor were made with the inability to pay or with the intent not to pay. The burden of proof rests with Citibank to establish that the Debtor had the intent to deceive Citibank regarding the charges made. Citibank has simply failed to meet this burden. Unlike the situation with the cash advances, Citibank has not provided the court with sufficient evidence to make a determination that the Debtor did not have the intent to pay for routine credit card purchases; Citibank failed to establish when each of the charges were made or that the Debtor knew he did not have the funds necessary to meet his payment obligations at the time the purchases were made. Nothing in the records or evidence produced at trial suggests to the court that the Debtor had the intent to deceive Citibank as regards credit purchases. To the contrary, the evidence suggests that the Debtor generally maintained his monthly payments to Citibank for the purchases up until April 1991. If he had had the intent to deceive Citibank, it would be uncharacteristic of him to continue making the required payments. The fact that the Debtor made monthly payments to Citibank indicates that he intended to pay the debt he incurred from the charges. Inasmuch as nothing in the records or the testimony presented at trial establish that the Debtor had the requisite intent to deceive Citibank regarding the charges made, the remaining $3,989.65 debt obligation is dischargeable.

Accordingly, and for the reasons stated herein,

IT IS ORDERED that the indebtedness owing by the Debtor, Julio Rodriguez, to the plaintiff, Citibank (South Dakota), N.A., in the sum of $7,717.00 plus interest representing cash advances, is nondischargeable under section 523(a)(2)(A);

IT IS FURTHER ORDERED that the balance of the indebtedness owing Citibank in the sum of $3,989.65 is amenable to discharge;

IT IS FURTHER ORDERED that each party shall bear their own attorneys fees and costs.

JUDGMENT MAY BE ENTERED ACCORDINGLY.