In re Mary C. RACILA, d/b/a Southern Belle Property Management, a/k/a McDonald Investment Group, a/k/a A. Robinson Companies, Debtor.

Alberta PAGE, Plaintiff,

v.

Mary C. RACILA, Defendant.

Bankruptcy No. 90–2713–BKC–3P7.
Adv. No. 90–259.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 31, 1992.

John R. Tamm, Daytona Beach, Fla., for plaintiff.

Albert H. Mickler, Jacksonville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the court upon complaint of Alberta Page seeking exception to discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6). A trial was held on January 14, 1992, and, upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

Defendant was the sole stockholder of McDonald Investment Group, Inc. and, for all practical purposes, the corporation was her alter ego.

The corporation was engaged in the business of purchasing real property for resale or rental. In the conduct of its business, the corporation routinely placed advertisements in a Daytona Beach newspaper.

In the fall of 1988, plaintiff decided to sell her residential real property located at 620 South Peninsula in Daytona Beach, Florida, described as:

Lot 2, ROWE TERRACE, as per map in Map Book 9, page 220, of the Public Records of Volusia County, Florida.

She listed the property with a real estate broker.

In October, 1988, having been unable to procure a buyer through the broker, plaintiff responded to one of McDonald Investment Group, Inc.'s advertisements in hopes of selling her property.

The two parties met at the property and discussed a sale. Upon learning that the property was listed with a broker, defendant informed plaintiff that the corporation did not want to be involved with the additional expense associated with a broker's commission.

No sale was formalized, but the parties decided to avoid the commission by entering into a lease agreement and later convert the lease to a purchase and sale. Accordingly, on October 13, 1988, they entered into an eight month lease with monthly rent payments of $500.00. The agreement allowed for termination upon sixty days notice by either party.

After the lease agreement was finalized, plaintiff vacated the premises and moved to Michigan.

Subsequently, the parties entered into negotiations to complete the purchase. Defendant, on behalf of the corporation, proposed a $75,500.00 purchase price with a purchase money mortgage of $20,000.00 and a second mortgage of $25,000.00. Plaintiff rejected the offer.

On January 9, 1989, plaintiff executed a contract for sale with a purchase price of $500.00. The document was signed by defendant on behalf of the corporation on January 23, 1989. It appears that the price was listed low in a further effort to avoid potential brokerage commissions.

The corporation executed a $73,500.00 promissory note on January 3, 1989, and delivered it to plaintiff. The note provided for a payment of $30,000.00 in sixty days, an additional $30,000.00 in twelve months, and the final $13,500.00 in twenty-four months.

Having received the promissory note, on January 30, 1989, plaintiff executed a warranty deed conveying title to the property to the corporation. Plaintiff knew that the deed would convey title and accepted the promissory note as consideration.

Subsequently, defendant either acquiesced or participated in the changing of the named grantee from the corporation to defendant, individually, on the warranty deed. The grantee change was coupled with a notation that the deed was given for love and affection. The intent was to avoid the Florida state documentary tax. Plaintiff had no knowledge of either change.

The warranty deed, as altered, was recorded in the public records of Volusia County, Florida, on February 2, 1989.

Subsequent to the recording of the deed, defendant borrowed funds from Ronald C. and Diane F. Kaiser, granting them a mortgage on the property as security. By summer of 1989, the mortgage was in default.

On July 28, 1989, defendant borrowed $50,000.00 from Floyd Graham and granted him a mortgage on the property. Defendant used $48,836.46 of the funds from Graham to satisfy the first mortgage.

Plaintiff instituted a state court action against defendant and the corporation for money damages, rescission of deed, vendor's lien, and constructive trust. A lis pendens was filed with the clerk of the Circuit Court, Volusia County, and subsequently recorded on July 28, 1989.

On July 9, 1990, defendant filed a voluntary chapter 7 petition, staying the state court action. Partial relief from the automatic stay was granted on October 29, 1990, to allow the state court to resolve issues related to the parties' positions in the real property. The order also stated that the state court findings would not be binding on this Court.

By Final Judgment dated June 6, 1991, the state court held that the warranty was voidable as between the parties, rather than void from the inception. Thus, the court rescinded the deed as of the date of the lis pendens, July 28, 1989. In addition, the state court held that Graham was equitably subrogated to the first mortgage holders and thus deemed to have a first mortgage as of February 7, 1989. Accordingly, plaintiff was declared to be the fee simple owner of the property subject to Graham's first mortgage.

## Conclusions of Law

■ The exceptions to discharge outlined in § 523 are designed to prevent the debtor from avoiding, through bankruptcy, the consequences of wrongful conduct. A creditor seeking to except a debt from discharge bears the burden of proof as to each particular element through a preponderance of the evidence. *Grogan v. Garner*, ——— U.S. ———, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### A. Fraud

11 U.S.C. § 523(a)(2)(A) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud....

■ To prevail on a claim under this section, a creditor must show the following:

(i) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(ii) the creditor relied on such representation;

(iii) his reliance was reasonably founded; and

(iv) the creditor sustained a loss as a result of the representation.

*In re Graham*, 122 B.R. 447, 450 (Bankr. M.D.Fla.1990); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986).

■ In the instant case, plaintiff has failed to show the existence of a false representation or deceptive intent on behalf of defendant. Essentially, plaintiff made a bad deal that was grossly mishandled by both parties. Changing the grantee on the deed prior to recording was not a deception aimed at plaintiff and did not impact on the agreement between the two parties.

The evidence demonstrates that plaintiff understood she was conveying title to the property and that the promissory note was consideration for the transfer. No showing of deceit or fraud by the defendant was made. Accordingly, the plaintiff has failed to carry its burden of proof on the fraud claim.

### B. Breach of Fiduciary Duty

11 U.S.C. § 523(a)(4) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

In order to prevail under this section the plaintiff must establish that defendant committed 1) fraud or defalcation while acting as a fiduciary or 2) embezzlement or 3) larceny.

■ A fiduciary relationship arises at law and in equity when one person places a special confidence in another, thereby binding that person to make a good faith effort to act in the best interests of the other. *In re Kelley*, 84 B.R. 225, 228 (Bankr.M.D.Fla. 1988). The question of what constitutes a fiduciary under § 523 is a question of federal law. *Id.* at 229. *In re Black*, 787 F.2d 503, 506 (10th Cir.1986); *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982); *In re Angelle*, 610 F.2d 1335 (5th Cir.1980).

■ Federal courts have found that the traditional view of fiduciary is too broad for bankruptcy purposes. *In re Kelley*, 84 B.R. at 229. Thus, the bankruptcy concept has been narrowed to include only express or technical trusts. *Id.; Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 207, 11 L.Ed. 236, 238 (1844).

■ In the case at bar, no such trust was created. Plaintiff executed the warranty deed understanding fully that the deed would divest her of her ownership rights. The transaction was for consideration and no express or technical trust was created. Therefore, no fiduciary relationship was created for purposes of § 523 and no defalcation could have occurred.

■ This Court has recognized that for purposes of dischargeability, embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Kelley*, 84 B.R. at 231 (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)). Although embezzlement does not require a showing of a fiduciary relationship, the plaintiff must prove fraud or fraudulent intent. *Id.*

Once again, no evidence of a fraudulent on the part of the defendant was shown. At best, the evidence indicates that plaintiff made a bad deal which was grossly mismanaged by both the parties. The plaintiff failed to carry her burden on the § 523(a)(4) claim.

### C. Willful and Malicious Injury

Section 523(a)(6) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

■ Willful and malicious injury under § 523(a)(6) includes conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights. *In re Van Loan*, 114 B.R. 760, 762 (Bankr.M.D.Fla.1990).

■ In the instant case, defendant acquired title by virtue of a transaction that was conducted at arm's length. Plaintiff willingly executed the warranty deed in exchange for the promissory note. Thus,

defendant legally gained title to the property and plaintiff was divested of her ownership claim. Accordingly, a claim of conversion against defendant cannot be sustained. Plaintiff's claim under § 523(a)(6) must also fail.

### D. Conclusion

The plaintiff failed to prove the elements of an exception to discharge under 11 U.S.C. §§ 523(a)(2), (4), or (6). Accordingly, the debt of $90,794.07 owed by defendant to plaintiff is covered by defendant's discharge.

A separate Final Judgement finding in favor of defendant and against plaintiff will be entered.