In re Douglas L. GOSNELL, Jr., Debtor.

AGRICREDIT ACCEPTANCE
CORP., Plaintiff,

v.

Douglas L. GOSNELL, Jr., Defendant.

Bankruptcy No. 91–23765–BKC–SMW.
Adv. No. 92–0954–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

Dec. 31, 1992.

William R. Wicks, III, Miami, FL, for plaintiff.

Susan R. Brown, Hollywood, FL, for defendant.

## MEMORANDUM OF DECISION

CHARLES J. MARRO, Bankruptcy Judge, by Special Designation.

This Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(a),

(b)(1)(2)(I), (J) and the General Order of Reference of the United States Bankruptcy Court for the Southern District of Florida.

This Memorandum of Decision constitutes findings of fact and conclusions of law issued under F.R.Civ.P. 52 as made applicable under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Agricredit Acceptance Corp. (Agricredit) filed its complaint to determine dischargeability of debt and for denial of discharge against the Defendant pursuant to § 523(a)(2)(A) and (B) and (a)(6).

These sections provide that a discharge does not discharge an individual from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a writing

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity—

An evidentiary hearing was held at which the following facts were established:

On December 6, 1990 Environmental Resources Corp. and Pure Energy, Inc. entered into an agreement entitled "Agricredit Acceptance Corporation—Lease Agreement" with Environmental Resources Corp. as Lessor and Pure Energy, Inc. as Lessee. The Debtor also executed this instrument as "Co-Lessee." Under the terms of said agreement the Lessor leased to the Lessees certain equipment i.e. 3 Greenskeeper Hydro Seeders, 5 High Pressure Spray Kits and 5 Air Gup Fill Kits with a leased value on delivery of $40,395.00.

Said agreement provided that the Lessee was to pay "for the entire term" as rent the aggregate sum of $50,765.40 with 3 payments in advance totaling $4,230.45 together with sales/use tax on advance payments of $338.40 and the balance in 33 equal monthly installments of $1,410.15 (which does not include sales/use tax) payable in advance on the 15th day of each month, beginning January 15, 1991.

At the time of execution by Agricredit each item of equipment was described by Make/Model but the serial numbers were omitted. Agricredit forwarded the agreement to the Lessee and the Debtor, Douglas Gosnell, Jr., as Co-Lessee, filled out in ink Serial Numbers which he described as his "tracing numbers." He also filled out in ink the location of the machinery as "10104 Iron Gate Rd Potomac MD 20854."

A financing statement covering the equipment with the tracing numbers furnished by the Debtor listed as serial numbers was recorded on Dec. 10, 1990 in the Financing Records of the MD.ST. Department of Assessments and Taxation and on Dec. 13, 1990 in the Clerk's Office of Montg Co MD.

This financing statement was signed by Douglas L. Gosnell, Jr. as Debtor and Environmental Resources Corp. as secured party. Agricredit was listed as Assignee. It also contained the following:

"EQUIPMENT LEASE"—(Does Not Create a Security Interest)"

On December 7, 1990 Environmental Resources Corp. assigned said lease to Agricredit. Paragraph 6 of said lease provided:

"6. Use and Return of Machinery.

Lessee agrees that the machinery is to be maintained and located only at the location indicated on the reverse side, hence from which it shall not be moved without Lessors prior written consent and lessee further agrees as follows: to operate the machinery in a careful manner, to keep it in good repair, to restrict its use to experienced and competent operators employed by the Lessee, to use the Machinery only in the conduct of the

Lessee's business, and to properly house and store the machinery when not in use; to pay all license and registration fees and sales, use and property taxes accessible against this lease transaction and/or the Machinery and Lessee shall reimburse Lessor, upon demand, as additional rent, the amount of any such taxes or costs paid by Lessor; to comply with all laws and regulations relating to the possession and use of the Machinery; to maintain the machinery and to repair any damage thereto; and upon the expiration or termination of the Lease; to return the machinery to the Lessor at its place of business, or such other place as is designated by the Lessor, in the same condition as when delivered, ordinary wear and tear accepted, free of any lien, encumbrance or security interest claim by any person. Lessee may not terminate this Lease prior to the end of the term."

The Debtor defaulted by failing to make any payments under said "lease" after the initial payment of $4,230.45.

The address inserted in the agreement by the Debtor was that of his home premises and it was the one that was required under his insurance master policy covering the equipment.

The equipment was located on trailers at this address during the months of January and February of 1991 and was moved in March after the Debtor received notice of foreclosure of his home premises.

The Debtor had a phone conversation with a representative of Agricredit and he informed him that 5 units of the equipment would be used in different locations and they were sent to Springfield, Virginia; Pontiac, Michigan; Seaford, Delaware; Belleville, Illinois and Atlanta, Georgia.

With the outbreak of the Persian War oil prices plummeted and the Debtor had no need for the Hydro seeders and planned to use them for demonstration with one of them sent out for marketing. It was also his intention to have them for use in the Kentucky and Tennessee oil fields.

In his discussions with Agricredit representatives he made it known that the equipment was not to be located at his home premises at all times.

Once the equipment was sent out from his premises the Debtor has no control as to who operated it or where or how it was stored and he had no control as to its use or repair although he did make arrangements to repair one piece of equipment when it became broken.

On November 28, 1990 the Debtor executed an application for credit with a financial statement dated June 30, 1990 attached and it showed a net worth of $2,602,000. Prior to the execution of the agreement on December 6, 1990 Agricredit obtained a credit bureau report of the Debtor and determined that he was "a very solid risk."

The Debtor understood that he was applying for financing of the equipment from Agricredit and construed the agreement he signed as a financing agreement and not a lease.

Prior to default by the Debtor Agricredit made no attempt to verify either the serial numbers of the equipment or its location citing as an excuse its involvement in 18,000 to 20,000 transactions a year of a similar nature as the one with the Debtor and that it would be too expensive to do so.

The balance due from the Debtor to Agricredit under the Agreement is $53,813.12.

## CONCLUSIONS AND DISCUSSION

■ Agricredit urges the Court to declare the debt nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B). This statute should be *strictly construed against the objection creditor* and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has pervaded the entire bankruptcy system. *Collier on Bankruptcy* 15th Ed. 523–16–17; *In re Rahm* 641 F.2d 755, 756, 757 (9th Cir.1981); *In re John W. Thomas* 116 B.R. 287 (Bkrtcy.M.D.Fla.1990). This is consistent with the overriding purpose of the Bankruptcy Code which is to release the Debtor from the burden of his indebtedness and provide him with a new opportunity in life, free from the pressures of

pre-existing debt. *Perez v. Campbell* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

■ The burden of establishing that he comes within the exceptions to the discharge is upon the objecting creditor. Although previously it was incumbent upon the creditor to do so by clear and convincing evidence the United States Supreme Court has determined that the preponderance of the evidence is now the appropriate standard under § 523(a) of the Bankruptcy Code.

■ Under § 523(a)(2)(A) the creditor must prove the following:

1. That the debtor made a false representation with the purpose and intent of deceiving the creditor.

2. That the creditor relied on the representation.

3. That the creditor's reliance was reasonable.

4. That the creditor sustained a loss as a result of the representation.

*In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *In re Julio Rodriguez*, 138 B.R. 112, 114 (Bkrtcy.S.D.Fla.1992); *In re Mary C. Racila* 138 B.R. 303, 305 (Bkrtcy. M.D.Fla.1992); *In re Lacey* 85 B.R. 908, 910 (Bkrtcy.S.D.Fla.1988).

■ The legislative history of § 523(a)(2)(A) establishes that a creditor must prove that the debt was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. Subparagraph (A) is intended to codify current case law e.g., *Neal v. Clark*, 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1877) which interprets "fraud" to mean actual or positive fraud rather than fraud implied in law. Case law follows the legislative history of this Section of the Bankruptcy Code. *See, In re Bill L. DeLisle* 125 B.R. 310, 312 (Bkrtcy.M.D.Fla.1991) where the Court said:

"In order to prevail in a case under § 523(a)(2)(A) of the Bankruptcy Code, a plaintiff must prove that the debtor's conduct involved actual fraud—either moral turpitude or intentional wrong on the debtor's part. *In re McAdams* 11 B.R. 153 (Bankr.Vt.1980). Fraud that is only implied in law, that is, fraud which exists without bad faith, is insufficient. *Id.*"

*See also, In re Gallaudet* 46 B.R. 918, 924 (Bkrtcy.D.Vt.1985) 3 Collier 15th Edition 523–45; *In re Fike* 31 B.R. 760 (Bkrtcy. D.Vt.1983).

■ The evidence in this case discloses that Agricredit, either consciously or subconsciously, created an oxymoron in the preparation of and the submission of the various transaction documents to the debtor for execution. The primary one was entitled "Agricredit Acceptance Corporation Lease Agreement" and was executed by Environmental Resources Corp. as Lessor, by Pure Energy, Inc. as Lessee and Douglas L. Gosnell, Jr. as Co–Lessee. It was assigned by Environmental Resources Corp. to Agricredit.

Attached to the "Lease" were financing statements which were recorded or filed and which were executed by Pure Energy, Inc. as *Debtor* and Environmental Resources Corp as *secured party* with a separate financing statement executed by Douglas L. Gosnell, Jr. as *Debtor* and Environmental Resources Corp. as *secured party.* This financing statement contained the notation "EQUIPMENT LEASE"—(Does not Create a Security Interest)."

All of the financing statements had attached thereto for a description of the collateral the equipment listed on Attachment "A" of the lease agreement and recited Agricredit as the Assignee.

In the light of this scenario the Debtor was justified in construing the transaction between him and Agricredit as a financing of the equipment. The Court also observes that in its complaint to determine dischargeability, Agricredit describes itself as the holder of a secured claim against the Debtor rather than Lessor.

The Court is convinced from the testimony of the Debtor that he did not consider it crucial to maintain the equipment on his home premises without being permitted to

use it at other locations. His testimony that he contacted representatives of Agricredit with reference to its use at other locations is credible. He appeared to be an honest witness and listed his "tracing" numbers as what he believed were serial numbers.

This was done with no evil intent but rather so that the equipment could be located should it become necessary to turn it back to Agricredit. In sum the Debtor's conduct did not involve actual fraud—either moral turpitude or intentional wrong on his part. Accordingly Agricredit has failed to meet its burden by establishing the first requisite under § 523(a)(2)(A) i.e. that the Debtor made a false representation with the purpose and intent of deceiving Agricredit as Creditor.

The evidence also establishes that Agricredit did not reasonably rely on the failure of the Debtor to keep the equipment at the address inserted by the Debtor in the lease or on his failure to insert therein the actual serial numbers.

Herbert E. Kaplan, the legal services manager of Agricredit, testified very affirmatively about the importance of keeping the equipment at the site described in the lease and of the necessity of having accurate serial numbers. Both of these were mandatory he contended so that the machinery could be inspected at any time and taken into possession or replevied if necessary.

The Court is impressed with the observations made by Kaplan but it does not comprehend why he did not make any attempt to verify the location or tracing numbers within a reasonable time after the lease was executed and assigned to Agricredit. The forms were prepared by it and delivered to the Debtor with the spaces for serial numbers and location of the equipment in blank. As a prudent person it was incumbent upon him to check these out but he failed to do so before the default occurred. His excuse was that Agricredit has 18,000 to 20,000 similar transactions a year and it would be very expensive to do so. This explanation is not plausible. Agricredit may deem it wise to carry on such an expanded operation but it should realize that it must be held to the same standard of conduct as applies to an individual who engages in a single and similar undertaking.

As a legal services manager for 24 years Kaplan has become very sophisticated in transactions of this nature and in the present commercial climate the Court is convinced that Agricredit did not reasonably rely on the information furnished by the Debtor and, therefore, has not met the second and third requirements under § 523(a)(2)(A) to afford it relief by declaring the debt non dischargeable. *See, In re Hunter,* supra.

The Court is inclined to believe that Agricredit relied solely on the credit application of the Debtor which as of June 30, 1990 showed that he had a net worth of $2,602,-000. as well as the report of the credit bureau from which Agricredit concluded that the Debtor was a very solid risk.

Agricredit's complaint is also grounded on 11 U.S.C. § 523(a)(6) which excepts from a discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

The legislative history as to this section indicates that "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled. (H.R.Rep. No. 595, 95th Cong. 1st Sess 365 (1977)). S Rep. No. 989, 95th Cong.2d Sess 79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865, 6321. *See also, Collier on Bankruptcy* 15th Ed. Vol 3 523–117; *In re Gallaudet, III* 46 B.R. 918, 927 (Bkrtcy.D.Vt.1985) defining "willful" as "deliberate or intentional" a deliberate and intentional act which necessarily leads to injury.

The evidence in this case fails to establish any willful and malicious act on the part of the Debtor which would cause an injury to the property described in the Agricredit lease and as a result Agricredit

has failed to establish that the debt is not dischargeable under § 523(a)(6).

Agricredit having failed to sustain its burden pursuant to § 523(a)(2)(A) and (B) and 523(a)(6) an Order is being entered, pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, dismissing the Plaintiff's complaint with prejudice.