In re Edward **BERNARD**, Debtor,

Christopher **MOTTA**, Plaintiff,

v.

Edward **BERNARD**, Defendant.

Bankruptcy No. 92–31175–BKC–RAM.
Adv. No. 92–0883–BKC–RAM–A.

United States Bankruptcy Court,
S.D. Florida.

Jan. 15, 1993.

William L. Epstein, West Palm Beach, FL, for plaintiff.

Steven R. Jacob, Boynton Beach, FL, for defendant/debtor.

## MEMORANDUM OF DECISION

CHARLES J. MARRO, Bankruptcy Judge, by Special Designation.

This Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(1)(2)(I) and the General Order of Reference of the United States Bankruptcy Court for the Southern District of Florida.

This Memorandum of Decision constitutes findings of fact and conclusions of law issued under FR Civ.P. 52 as made applicable under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Plaintiff's complaint to determine dischargeability of the Defendant's debt to the Plaintiff is predicated on 11 U.S.C. §§ 523(a)(2)(A), (a)(4), (a)(6).

From the evidentiary hearing held, including the telephonic deposition of the Plaintiff, Christopher Motta, the following findings of fact are made and conclusions reached:

## FINDINGS OF FACT

The Debtor for a number of years prior to the filing of his petition for relief under Chapter 7 was an active general contractor and developer, bought and sold real estate, both commercial and residential. At present he is disabled with bilateral fractures of both legs.

In 1978 he married Catherine Motta, the mother of the Plaintiff who lived with the Debtor from 1984 to 1990. About five years ago his wife left him and went to live in New Jersey but the Plaintiff as stepchild continued to live with the Debtor and his other children until he left in 1990.

The relationship between the Debtor and the Plaintiff was of the roller coaster variety—sometimes it was good and sometimes bad. At first while the Plaintiff was young, between the ages of six and ten, it was good. But the Debtor then began to drink and the situation became progressively worse with the result that the Plaintiff suffered both physical and mental abuse from the Debtor as his stepfather.

In April, 1987 the Plaintiff was involved in an automobile accident and suffered serious injuries and it became necessary for him to go through an extended period of rehabilitation. A lawsuit was instituted by the firm of Broad and Casal. A settlement ensued as a result of which the Plaintiff received from this firm two checks—one dated 7–26–89 in the sum of $92,783.91 and the other dated 10–13–89 in the sum of $28,830.04. At the request of the Debtor, the Plaintiff endorsed the checks and turned them over to him. This was done voluntarily by the Plaintiff who, at that time, trusted his stepfather.

The Debtor intended to use the proceeds from the checks for the education of the Plaintiff but instead they were spent for the support of the family, including the Plaintiff, for investment in real estate which turned sour and resulted in foreclosure. Property was purchased in Bel Air, Boynton Beach and Delray Beach with $23,000.00 spent in Bel Air on renovations and $12,000.00 to $15,000.00 spent on improvements on the Delray property.

As a result of these expenditures and money used in support of the family and personal expenses of the Debtor the Plaintiff received none of the settlement funds with the exception of $8800 as a down payment for a car.

After leaving the household of the Debtor in 1990 the Plaintiff began making demands upon him for the balance of the settlement proceeds but to no avail. The Plaintiff decided to force the issue by instituting suit against the Debtor in March, 1990 in the Circuit Court of Palm Beach County, Florida for conversion and breach of a constructive trust. This lawsuit resulted in a settlement for $60,000.00 plus interest at 8% payable in installments with a written stipulation executed by the parties. The Circuit Court on April 15, 1991 approved the stipulation for settlement and its terms were made an order of the Court. In addition the Court retained jurisdiction for the purpose of enforcing the terms of the Stipulation For Settlement.

The Debtor made two payments amounting to $20,000.00 and defaulted on the remaining payments required under the stipulation. As a result the Circuit Court on December 4, 1991 entered final judgment in favor of the Plaintiff against the Defendant in the sum of $40,000.00 principal plus accrued interest of $2,160.00 for a total of $42,160.90. On the date of the filing of the Debtor's petition for relief the Plaintiff held a judgment claim against the Debtor for $42,160.90 plus interest.

## CONCLUSIONS AND DISCUSSION

■ In making a determination as to whether the debt of the Debtors to the Plaintiff falls within 11 U.S.C. § 523(a)(2)(A) the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system. 3 Collier on Bankruptcy 15 Ed. 523—16–17; *In re Rahm* 641 F.2d 755–57 (9th Cir.1981); *In re Lowinger* 19 B.R. 853, 855 (Bkrtcy S.D.Fla.1982); *In re Thomas* 116 B.R. 287 (Bkrtcy M.D.Fla.1990).

Such a construction of the exceptions to the Discharge is consistent with the overriding purpose of the Bankruptcy Code which is to release the Debtor from the burden of his indebtedness and provide him with a new opportunity in life free from the pressures of pre-existing debt. *Perez v. Campbell* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

The burden of establishing an exception to the discharge is upon the objecting creditor. Although previously it was incumbent upon the creditor to do so by clear and convincing evidence the United States Supreme Court has recently decided that the preponderance of the evidence is now the appropriate standard under § 523(a) of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

To prevail under § 523(a)(2)(A) a creditor must prove the following:

1. That the debtor made a false representation with the purpose and intent of deceiving the creditor.

2. That the creditor relied on the representation.

3. That the creditor's reliance was reasonable.

4. That the creditor sustained a loss as a result of the representation.

*In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *In re Julio Rodriguez* 138 B.R. 112, 114 (Bkrtcy S.D.Florida 1992); *In re Mary C. Racila* 138 B.R. 303, 305 (Bkrtcy M.D.Fla.1992); *In Re Lacey* 85 B.R. 908, 910 (Bkrtcy S.D.Fla.1988).

The legislative history of § 523(a)(2)(A) establishes that a creditor must prove that the debt was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. Subparagraph (A) is intended to codify current case law e.g., *Neal v. Clark* 95 U.S. 704, 24 L.Ed. 586 (1887) which interprets "fraud" to mean actual or positive fraud rather than fraud implied in law. Case law follows the legislative history of this Section of the Bankruptcy Code. *See, In re Bill L.*

*DeLisle* 125 B.R. 310, 312 (Bkrtcy M.D.Florida 1991) where the Court said: "In order to prevail in a case under § 523(a)(2)(A) of the Bankruptcy Code, a plaintiff must prove that the debtor's conduct involved actual fraud—either moral turpitude or intentional wrong on the debtor's part. In re McAdams 11 B.R. 153 (Bankr.Vt.1980). Fraud that is only implied in law, that is, fraud which exists without bad faith, is insufficient. Id."

*See also, In Re Gallaudet* 46 B.R. 918, 924 (Bkrtcy D.Vt.1985) 3 Collier 15th Edition 523–45; *In re Fike*, 31 B.R. 760, 763 (Bkrtcy D.Vt.1983).

In the instant case the Court feels that the Debtor harbored no intent to deceive the Plaintiff when the checks were turned over to him. At that time he intended in fact to use the proceeds for the support and education of his stepson. However, he was faced with an investment decision and, with his background as a contractor and real estate developer, he felt that he could realize his goal in achieving a healthy return on the proceeds. The real estate market turned sour and the net result was a loss of most of the money. It is noted that when the checks were endorsed over by the Plaintiff he was eighteen years of age and had confidence in his stepfather. Under the circumstances the Court is not convinced that the Debtor intended to deceive the Plaintiff and, therefore, proof of the exception to discharge under § 523(a)(2)(A) fails.

The second ground for exception to discharge is § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Fraud under this section was construed in *Neal v. Clark* 95 U.S. 704, 24 L.Ed. 586 as follows:

"The fraud referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. Such a construction of the statute is consonant with equity and

consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency. A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system."

See also *In re Robert S. DiMarco* 105 B.R. 128 (Bkrtcy S.D.Fla.1989) citing *Royal Typewriter Co. v. Xerographic Supplies Corp.* 719 F.2d 1092, 1104 (11th Cir.1983) where the Court said:

"Actionable misrepresentations must ordinarily relate to a past or existing fact. (Case cited). A false statement amounting to a promise to do something in the future is not actionable fraud ..."

The Debtor's statement amounted to a promise to do something in the future i.e. to use the proceeds of the checks for the support and education of the Plaintiff.

A further requirement under § 523(a)(4) is that the fraud or defalcation must be committed while acting in a *fiduciary capacity*. Underscoring supplied.

■ While acting in a fiduciary capacity has been limited to express or technical trusts and not to those which the law implies from contracts. *In Re Banister* (2nd Cir.1984) 737 F.2d 225; *Davis v. Aetna Acceptance Co.* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934) where the Court said:

"It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto."

The Court further observed:

"As we have ruled in rejecting nondischargeability under section 17(a)(2) the financing agreements did not create an express obligation requiring Northern Yachts to hold in trust for Wachovia the specific proceeds of inventory sold."

In *Davis*, supra, Justice Cardozo cogently remarks at page 334, 55 S.Ct. at page 154:

"It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto ... Was petitioner a trustee in that strict and narrow sense?

"We think plainly he was not, though multiplicity of documents may observe his relation if the probe is superficial ... The resulting obligation is not turned into one arising from a trust because the parties to one of the documents has chosen to speak of it as a trust."

See also Collier on Bankruptcy 15th Edition § 523.14, pages 523–14, 115; *In Re Paley* (Bkrtcy.E.D.N.Y.1981) 8 B.R. 466, 3 C.B.C.2d 648; *In Re Falk of Bethlehem, et al.,* (Bkrtcy.D.N.J.1980) 3 B.R. 266, 270; *First National Bank of Enosburg Falls v. E.E. Bamforth,* [1916] 96 A. 600, 90 Vt. 75, 79."

See also *In re Racila* 138 B.R. 303, 306 (Bkrtcy M.D.Fla.1992) § 523(a)(4) does not apply to frauds of agents, bailees, brokers, factors, partners and other persons similarly situated. 3 Collier 15 Ed. 523–97–8. The Court construes the Debtor as stepfather as a person similarly situated.

The Plaintiff has not met the criteria for bringing himself within § 523(a)(4).

The Plaintiff also relies on § 523(a)(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

■ The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. 3 Collier 15 Ed. 523–117 § 523.16.

■ The legislative history of this section indicates that the term "willful" means deliberate or intentional and that the looser standard of "reckless disregard" under *Tinker v. Colwell* 139 [193] U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 was overruled. There must be an actual conscious intent to harm. *In re Gallaudet* 46 B.R. 918, 927 (Bkrtcy D.Vt.1985); *In re Graham, Jr. et als.,* 7 B.R. 5 (Bkrtcy D.Nevada 1980); *In*

re *McLaughlin* 14 B.R. 773 (Bkrtcy N.D.Ga.1981).

The Plaintiff has failed in its proof under § 523(a)(6).

The Court observes that the causes of action for alleged conversion and violation of a constructive trust were settled in the Circuit Court of Florida and a Final Judgment was entered by that court for default by the Debtor of payments under a stipulation approved by the court. This resulted in a merger of the causes of action in a judgment with the old debt ceasing to exist and the new judgment debt taking its place. The judgment becomes evidence of the debt or the sole test of the rights of the parties in the sense that a proceeding in reference thereto should be founded on the judgment. 30 Am.Jur. 906 § 158. The Plaintiff recognizes this by his attempt to declare the judgment nondischargeable.

The Court is cognizant that the merger of a cause of action in a judgment does not mean an annihilation and discharge of the debt so as to preclude an examination of its character or nature for all purposes. 30 Am.Jur. 906 § 158. However, it is noted that the judgment is based on the terms of the settlement and not on the original causes of action which, in a sense, evaporated with the approved settlement. As a result the Plaintiff's Claim is now based on a judgment debt which is dischargeable.

A separate Order, in accordance with this Memorandum of Decision is being entered in accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure.