In re Harold Eugene SCHRAW, Debtor.

FIRST AMERICAN BANK OF INDIAN RIVER COUNTY, Plaintiff,

v.

Harold Eugene SCHRAW, Defendant.

Bankruptcy No. 91–31323–BKC–RAM. Adv. No. 91–0862–BKC–RAM–A.

United States Bankruptcy Court, S.D. Florida.

Jan. 29, 1992.

Jeffrey Frank, Levine & Frank, Palm Beach Gardens, Fla., for plaintiff.

Robert C. Furr, Boca Raton, Fla., for defendant.

## MEMORANDUM OF OPINION AND ORDER [1]

RANDOLPH BAXTER, Bankruptcy Judge.

In this adversary proceeding the Plaintiff, First American Bank of Indian River County (First American), seeks to have its claim determined to be nondischargeable pursuant to § 523(a)(2)(B) of the Code. It further seeks a denial of the Debtor's discharge based upon various provisions of § 727 of the Bankruptcy Code.

Following a trial of the matter, a review of the evidence admitted and the record, generally, the following findings of fact and conclusions of law are hereby made:

Over an extended period of time, the co-debtor Harold Eugene Schraw, (Dr. Schraw), a licensed veterinarian, applied and received several loans from First American. Each loan was secured. Attendant to each loan, Dr. Schraw executed and delivered a promissory note to First American. The stipulated facts (See, Bilateral Pretrial Stipulation) indicate that Dr. Schraw executed and delivered promissory notes for loans on or about the following dates:

| Note # 1 | Date Delivered | Note Amount | Maturity Date |
|---|---|---|---|
| 01320 | 4–27–89 | $45,000.00 | 10–24–90 |
| 01447 | 9–12–89 | $20,000.00 | 1–10–90 |
| — | 11–14–89 | $18,582.25 | 2–14–90 |
| 01609 | 4–18–90 | $21,500.00 | 7–17–90 |

As of the petition filing date, the Debtor owed First American a total of $112,616.72, inclusive of principal and interest. The Bank required the Debtor to submit personal financial statements as part of the loan approval process. Respecting the aforementioned loans, the Debtor submitted personal financial statements to First American dated March 2, 1988, February 12, 1989, and March 14, 1990, respectively. The parties have further stipulated that those financial statements contained inaccurate information (*Id.*, p. 2). The stipulated inaccuracies in each financial statement pertain to the ownership status of certain reported real estate being listed as "solely owned" when, in fact, the real estate was jointly owned by the co-debtors.

The loan applications and loan reports signed by the Debtor were dated as follows:

### I.

| | | |
|---|---|---|
| 4–27–89 | 2–22–90 | 6–4–90 |
| 9–12–89 | 4–10–90 | 7–9–90 |
| 10–24–89 | 4–18–90 | 7–17–90 |
| 11–14–89 | 4–20–90 | 8–3–90 |
| 1–10–90 | | |

The dispositive issues are two-fold: (1) whether the Debtor submitted written information to First American with a deceitful intent and upon which the Bank reasonably relied in approving the subject loans; (2) and secondly, whether the Debtor has engaged in conduct which would result in the denial of a discharge in bankruptcy.

First American alleges nondischargeability of the subject loans based upon provisions of § 523(a)(2)(B) of the Bankruptcy Code. Therein, a debt is nondischargeable where a written statement is tendered by a debtor which is: (1) materially false; (2) respecting the debtor's or an

1. Judge Randolph Baxter, U.S. Bankruptcy Judge, N.D., Ohio, sitting by designation.

insider's financial condition; (3) on which the creditor reasonably relied and (4) which the debtor caused to be published with an intent to deceive. In order to sustain its allegation, the burden of proof is upon First American. That burden must be carried by a preponderance of the evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■■■■ The creditor not only must have relied on the financial statement, the reliance must have been reasonable. The legislative history suggests that the emphasis is on the reasonableness of the reliance. When Congress enacted Section 523(a)(2) of the Bankruptcy Code, the word "reasonable" was added to the language of Section 17(a)(2) of the prior act. *See,* H.R. No. 95–595, Cong. 1st Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787. The reasonableness requirement was added to prevent the recognized abusive practice of creditors who induced false financial statements on which they would not rely but utilized to threaten litigation, if the debtor subsequently filed bankruptcy. *In re Furimsky*, 40 B.R. 350, 353 (Bankr.D.Ariz.1984).

■■■■ The standard for measuring the reasonableness of a creditor's reliance is an objective one. Reasonableness requires the representations to be of such a character that a reasonably prudent person would rely on them. *In re Price*, 48 B.R. 211, 213 (Bankr.S.D.Fla.1985). "Where a bank relies on a stale financial statement and never inquires as to whether the statements actually reflect the debtor's current financial situation, the bank fails to show reasonable reliance." *In re Ogden*, 119 B.R. 277, 279 (Bankr.M.D.Fla.1990), (*citing In re Benore*, 108 B.R. 797 (Bankr.M.D.Fla. 1989)).

## II.

Robert McWilliams, the president of First American, testified on behalf of the Plaintiff bank. His testimony was credible, generally, and revealed that he had known the Debtor in a professional capacity between fifteen and seventeen years. He was personally familiar with the subject loans and was involved in the approval process of those loans. Regarding the March 2, 1988 loan, he was familiar with the loan application and the personal financial statement (Ex. B) submitted by the Debtor in support of that application. McWilliams was of the belief that the bank received the financial statement dated March 2, 1988 prior to the date of loan approval. (McWilliams, Direct). That testimony was disputed by Dr. Schraw who testified that he prepared the March 2, 1988 financial statement (Ex. B) after he had received the loan from First American. Dr. Schraw further testified that the loans he received on April 27, 1989, September 12, 1989, and on April 18, 1990 were all approved with no financial statements being provided to the Bank prior to the loan approvals. (Dr. Schraw, Direct). He stated that this was his usual course of dealing with the bank (First American), but regarding the April 27, 1989 loan, he submitted no financial statement at all. On both the September 12, 1989 and April 18, 1990 loans, he testified that he gave financial statements only after both loans were approved.

That testimony of Mr. McWilliams and of Dr. Schraw is of particular significance. Although no financial statement was introduced into evidence which was in close proximity to the September 12, 1989 and the November 14, 1989 loans, financial statements submitted by the Debtor on February 12, 1989 and on March 14, 1990 were submitted in close proximity to the loans of April 27, 1989 and of April 18, 1990. According to McWilliams, First American required its borrowers to submit personal financial statements annually (McWilliams, Direct). That testimony was unrefuted.

## III.

The loan application and loan report for the April 27, 1989 loan requested $45,000.00, unsecured, with a maturity date of October 24, 1989. (Ex. E). McWilliams testified that the approval for that loan would have been based upon the information contained in the March, 1988 financial statement and the February 12, 1989 financial statement submitted by the Debtor, Dr.

Schraw. Subsequent to the approval of that loan, he learned that those financial statements contained false information regarding the joint ownership of certain real estate reportedly owned by the Debtor. Both the March 2, 1988 and the February 12, 1989 financial statements reflected sole ownership of these assets, while the Debtor's bankruptcy schedules show joint ownership of the same real estate. The Bank relied on both financial statements in approving the April 27, 1989 loan (McWilliams, Direct). He testified, unequivocally, that he would not have approved this loan had he known of the inaccuracies in those financial statements and did not require the Debtor's wife's signature on the note because these assets were listed as being singularly vested in Dr. Schraw (*Id.*). At paragraph No. 8 of the Bilateral Pretrial Stipulation, the Debtor stipulated to the inaccuracy of the real estate ownership data in those two financial statements.

■ The reliance of First American on the February 12, 1989 financial statement was reasonable, as it was submitted by the Debtor to the Bank within reasonable proximity to the time of the April 27, 1989 loan application which the Bank considered and approved. The same property was listed as solely owned in the Debtor's March 1, 1988 financial statement. His bankruptcy petition schedules reflected that the property was jointly owned. I find that the misrepresentation was intentional and was designed to deceive the Bank's loan officer. With the Debtor's aforementioned stipulation of the inaccuracies in the February 12, 1989 statement, the standards for nondischargeability under § 523(a)(2)(B) of the Code have been joined and, accordingly, the balance remaining on the April 27, 1989 loan is hereby determined to be nondischargeable. Due to the remoteness of the March 1, 1988 financial statement, any reliance placed on its contents by the Bank was not reasonably made in view of the April 27, 1989 loan being considered more than one year later.

■ Next, consideration is given to the dischargeability of the September 12, 1989 loan. Plaintiff's Exhibit F contains the Loan Application and Loan Report for that loan. Relevant testimony revealed that the Bank required annual financial statements from its borrowers. (McWilliams, Direct). Again, that testimony was unrefuted, with the closest financial statement to the September 12, 1989 loan having been submitted by the Debtor on February 12, 1989. (Ex. C). According to the Debtor's testimony, he delivered no financial statement to First American consequent to this particular loan application. This was unrefuted. Instead, he submitted one after the loan had been approved and issued, at McWilliams' request, in order to document the Bank's files. McWilliams testified that the only documentation he had before him at the time of this loan approval was the March, 1988 financial statement (Ex. B) and the February, 1989 financial statement (Ex. C). Accordingly, the evidence clearly demonstrates that the September 12, 1989 loan was approved without any reliance on a financial statement submitted by the Debtor within a reasonably close time period in which the loan was approved. Thusly, any reliance by the Bank on the March, 1988 and the February 12, 1989 financial statements was unreasonable. This is particularly so where the Bank approved an intervening loan for the Debtor on April 27, 1989 which was reliant upon those earlier financial statements. Any subsequent loan approval, more appropriately, should have been based upon updated financial data that could have been requested of the Debtor. Accordingly, any loan balance remaining on the September 12, 1989 loan to the Debtor is hereby determined to be dischargeable.

The next loan for dischargeability consideration is the note delivered on November 14, 1989. For the same reasons stated above for determining that the September 12, 1989 loan balance was dischargeable, the loan balance remaining on the November 14, 1989 loan is also determined to be dischargeable. The subject note was delivered to First American on November 14, 1989 in the amount of $18,582.25 and matured on February 14, 1990.

An examination of the evidence admitted reveals that no financial statement was submitted by the Debtor prior to and in

reasonably close proximity to the November 14, 1989 loan being approved by First American. Thusly, any reliance on earlier financial statements submitted by the Debtor for earlier approved loans was unreasonable. Accordingly, any loan balance remaining on the November 14, 1989 loan is hereby determined to be dischargeable.

Finally, consideration is given to the loan approved on April 18, 1990. According to the Debtor's testimony, he delivered a financial statement to First American for the purpose of documenting the Bank's files. (Eugene Schraw, Direct Exam.). The record reveals that a financial statement, prepared by the Debtor, was submitted to the Bank and was dated March 14, 1990. As stated above, the Debtor has conceded that said financial statement contained inaccurate information. It was dated approximately one month prior to the loan approval of April 18, 1990. As such, it was submitted at a time sufficiently close to and prior to the Bank approving the loan on April 18, 1990. First American's ill-fated reliance on that financial statement was reasonable. Accordingly, any balance remaining on the loan note dated April 18, 1990 is hereby determine to be nondischargeable. As stated in the bilateral stipulation, the Debtor knew certain of the information provided by him was inaccurate in the March 14, 1990 financial statement. The representations in that financial statement were intentionally made with an intent to deceive. The Debtor's stipulation to the inaccurate information during the course of an adversary proceeding does not cure the deceitful intent which occurred prior to the time the loan was approved. The pertinent time for assessing the nature of a debtor's intent under § 523(a)(2) is the point in time in which the misrepresentation occurred.

Next, the Court considers the Bank's allegations that the Debtors should be denied a discharge pursuant to provisions of § 727(a)(2), (a)(3), (a)(4)(A), and of (a)(5) of the Bankruptcy Code [11 U.S.C. 727(a)(2), et seq.]. In examining the testimony and admitted evidence in view of these allegations, the Plaintiff, First American, has failed to present sufficient evidence to demonstrate that a discharge should be denied the Debtor under the referenced Code provisions.

In determining whether a discharge is to be afforded under § 727, the burden of proof is upon the party contesting the discharge. In doing so, the burden must be sustained by clear and convincing evidence in order for the complainant to prevail. *In re Ingersoll*, 124 B.R. 116 (M.D.Fla.1991); *In re Santomaso*, 123 B.R. 115 (Bankr.S.D.Fla.1991). At bar, that burden has not been carried by the required standard. Accordingly, First American's complaint to deny the Debtors a discharge under § 727 is denied.

## IV.

### CONCLUSION

Accordingly, the balances remaining on the April 27, 1989 and the April 18, 1990 notes are hereby determined to be nondischargeable. The loan balances remaining on the notes delivered on September 12, 1989 and on November 14, 1989 are hereby determined to be dischargeable. Further, First American's request to deny the Debtor a discharge under § 727 is hereby denied.

IT IS SO ORDERED.