**In re Juan DELGADO and Sonia Delgado, his wife, Debtors.**

**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Juan DELGADO and Sonia Delgado, his wife, Defendants.**

**Bankruptcy No. 92–14175–BKC–SMW.**
**Adv. No. 92–1019–BKC–SMW–A.**

United States Bankruptcy Court,
S.D. Florida.

Jan. 8, 1993.

Robert I. Spiegelman, Miami, FL, for plaintiff.

Sandy Karlan, P.A., Miami, FL, for debtors-defendants.

## MEMORANDUM OF DECISION

CHARLES J. MARRO, by Special Designation.

This Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(1), (2)(I) and the General Order of Reference of the United States Bankruptcy Court for the Southern District of Florida.

This Memorandum of Decision constitutes findings of fact and conclusions of law issued under F.R.Civ.P. 52 as made applicable under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Court has before it for determination the Complaint of Allstate Insurance Company (Allstate) as Plaintiff to determine dischargeability of a debt of $70,000.00 incurred by the Debtors by reason of payment by Allstate of said sum under a bond issued by it at the instance of the Debtors.

The complaint is predicated on 11 U.S.C. §§ 523(a)(2)(A) and (B) which provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a writing

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

From the evidentiary hearing held the following findings of fact have been established and conclusions reached:

## FINDINGS OF FACT

For several years prior to the filing of their petition for relief the Debtors shareholders and officers of a travel agency which transacted business as a corporate entity under the name of Melloul Travel Consultants, Inc. (Melloul). They also held a franchise from Burger King operating under the corporate name of Jackie O's Inc.

The travel agency was very successful with a gross of 5.96 million and 5.8 million in 1989 and 1990, respectively, and a net profit of $126,000.00 and $120,000.00 in 1989 and 1990, respectively. However, with the decrease in travel the agency came upon hard times and ceased operation in August, 1991.

In the operation of its travel agency Melloul was required to post a bond in favor of Airlines Reporting Corporation (ARC) which regulated the sale of airline tickets which were issued by travel agents.

In 1990 Melloul had a bond in effect which was issued through the Hartford Insurance Company and was due to expire on November 29, 1990. Prior to that date Melloul had posted a standby letter of credit in lieu of the bond and was prepared to post a certificate of deposit in the required amount if another bond was not obtained after the expiration of the Hartford Insurance Company bond on November 29, 1990.

Johnny Delgado, the son of the debtors, and Ignacio Borbolla the insurance agent for ALLSTATE had been students together in high school in 1978. In August of 1990 they renewed their friendship at a high school reunion and discussed the insurance needs of the corporations controlled by the Debtors and the turning over of business to Borbolla. As a beginner Borbolla insured three automobiles owned by the Delgados or leased by one of their corporations. Borbolla anticipated annual premiums of about $15,000.00 from the insurance business he expected to get from the Debtors.

Several days before the expiration of the Hartford Insurance Company Bond on November 29, 1990 Johnny Delgado called Borbolla by telephone and informed him that his parents needed a bond right away or they would have to deposit a Certificate of Deposit as a substitute.

Borbolla obtained the necessary application and made a very favorable recommendation to ALLSTATE stressing that he knew Johnny Delgado for some years and that the Burger King restaurant business was good, all of this in his eagerness to obtain the insurance business of the Debtors.

The Debtors executed the required application for the bond together with documents required by Martin Mulvihill, the Bond Underwriting Manager of ALLSTATE. Included in these was an indemnity agreement signed by the Debtor's individually, June 30, 1989 and June 30, 1990 year end balance sheets and income statements for Melloul, their personal financial statement dated June 30, 1990. None of these documents was prepared specifically for ALLSTATE but were submitted to it with their application for the Bond.

ALLSTATE also obtained a Dunn & Bradstreet Credit Report as to the Debtors and contacted bank officers of the Barnett and Sun Banks with which the Debtors and their corporations did business. These officers reported to Mulvihill that their experience with the Debtors was generally satisfactory and that it was positive for the past 3 to 5 years. They described the Debtors as a good credit risk.

With bond indemnity ALLSTATE considered the three C's—character, cash and capacity. The Debtors passed the test as to these three categories.

The personal financial statement of the Debtors dated June 30, 1990 showed their net worth as $2,924,000.00. Liabilities listed consisted of Notes payable to banks in the sum of $43,000.00 and real estate mortgages of $261,000.00 for a total of $304,000.00. The statement indicated that they had no contingent liabilities although they had made personal guaranties in substantial amounts on obligations of their corporations.

The Debtors did not understand that such guaranties were contingent liabilities and for that reason did not list them. During the years that they were in business they never had to make good on any guaranty.

The Debtors also failed to list outstanding obligations from the use of their credit cards and had never listed them on any of their financial statements. They made payments of these as current obligations.

Before the issuance of the Bond by ALLSTATE Bond Writing Manager Mulvihill had no conversation with Delgado concerning any of the documents executed by the Debtors; he made no attempt to check out their liabilities; never requested any additional financial information and did not request a more current financial statement.

ALLSTATE furnished the Bond and on August 13, 1991 ALLSTATE was notified by ARC of a claim against the bond issued on behalf of Melloul as principal and ALLSTATE as surety in the sum of $70,000.00 for unpaid airline tickets sold by Melloul from May 19, 1991 through July 14, 1991 in the amount of $516,114.38.

ALLSTATE paid the ARC claim of $70,000.00 on December 19, 1991 and by virtue of their indemnity agreement the Debtors owe ALLSTATE said sum of $70,000.00.

## CONCLUSIONS AND DISCUSSION

■ In making a determination as to whether the debt of the Debtors to the Plaintiff falls within 11 U.S.C. §§ 523(a)(2)(A) and (B) the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system. 3 Collier on Bankruptcy 15 Ed. 523—16–17; *In re Rahm*, 641 F.2d 755–57 (9th Cir.); *In re Lowinger* 19 B.R. 853, 855 (Bkrtcy. S.D.Fla.1982); *In re Thomas* 116 B.R. 287 (Bkrtcy.M.D.Fla.1990).

Such a construction of the exceptions to the Discharge is consistent with the overriding purpose of the Bankruptcy Code which is to release the Debtor from the burden of his indebtedness and provide him with a new opportunity in life free from the pressures of pre-existing debt. *Perez v. Campbell* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233; *Lines v. Frederick* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124.

■ The burden of establishing an exception to the discharge is upon the objecting creditor. Although previously it was incumbent upon the creditor to do so by clear and convincing evidence the United States Supreme Court has recently decided that the preponderance of the evidence is now the appropriate standard under § 523(a) of the Bankruptcy Code. *Grogan v. Garner* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

To prevail under § 523(a)(2)(A) and (B) a creditor must prove the following:

1. That the debtor made a false representation with the purpose and intent of deceiving the creditor.
2. That the creditor relied on the representation.
3. That the creditor's reliance was reasonable.
4. That the creditor sustained a loss as a result of the representation.

*In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *In re Julio Rodriguez* 138 B.R. 112, 114 (Bkrtcy.S.D.Florida 1992); *In re Mary C. Racila* 138 B.R. 303, 305 (Bkrtcy.

M.D.Fla.1992); *In re Lacey* 85 B.R. 908, 910 (Bkrtcy.S.D.Fla.1988).

The legislative history of § 523(a)(2)(A) establishes that a creditor must prove that the debt was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. Subparagraph (A) is intended to codify current case law e.g., *Neal v. Clark* 95 (5 Otto) U.S. 704, 24 L.Ed. 586 (1887) which interprets "fraud" to mean actual or positive fraud rather than fraud implied in law. Case law follows the legislative history of this Section of the Bankruptcy Code. *See, In re Bill L. DeLisle* 125 B.R. 310, 312 (Bkrtcy.M.D.Florida 1991) where the Court said:

"In order to prevail in a case under § 523(a)(2)(A) of the Bankruptcy Code, a plaintiff must prove that the debtor's conduct involved actual fraud—either moral turpitude or intentional wrong on the debtor's part. In re McAdams 11 B.R. 153 (Bankr.Vt.1980). Fraud that is only implied in law, that is, fraud which exists without bad faith, is insufficient. Id."

*See also, In Re Gallaudet* 46 B.R. 918, 924 (Bkrtcy.D.Vt.1985) 3 Collier 15th Edition 523–45; *In re Fike* 31 B.R. 760 (Bkrtcy. D.Vt.1983).

■ The evidence in this case discloses that ALLSTATE was extremely anxious to obtain the insurance business of the corporations controlled by the Debtors with the resulting premiums amounting to approximately $15,000.00. It therefore took it upon itself to consider the application for the bond on very short notice and in support thereof accepted a stale personal financial statement of the Debtors dated June 30, 1990 which was about five months prior to the issuance of the bond by ALLSTATE.

The Debtors furnished all of the documents and information requested by ALLSTATE holding nothing back. Their explanation that they had never listed guaranties on any of the financial statements furnished by them and did not understand that they constituted contingent liabilities was

plausible as was their failure to list obligations on credit cards. This explanation was buttressed by the fact that they had never had to make good on any guaranty and that their bankers had represented to ALLSTATE that their experience with the Debtors was generally satisfactory and that they were a good credit risk.

The Court also observes that the Debtors were not depending solely on the bond to be furnished by ALLSTATE since they were prepared, in lieu thereof, to put up a Certificate of Deposit to satisfy the requirements of ARC.

The Court is convinced that the testimony of Debtor Juan Delgado is credible and that the Debtors had no evil intent in their dealings with ALLSTATE. They furnished the June 30, 1990 financial statement solely upon the request of ALLSTATE but with no intent to deceive it. Under these circumstances ALLSTATE has failed to establish actual or positive fraud as required under § 523(a)(2)(A), (B).

The Court also concludes that there was not reasonable reliance by ALLSTATE on the financial statement furnished. It finds it peculiar that the Bond Underwriting Manager of ALLSTATE would not request an up to date financial statement and would not check out the liabilities shown on the statement especially with notes payable and real estate mortgages as the only ones listed. The statement was made five months prior to the issuance of the bond which in itself indicates that ALLSTATE was placing no reliance on it as the true financial condition of the Debtors at the time that the bond was furnished.

The courts have generally held that creditors cannot reasonably rely on stale financial statements. *In re Schraw*, 136 B.R. 301 (Bkrtcy.S.D.Fla.1992).

In *Schraw* the Court observed at page 304:

> The standard for measuring the reasonableness of a creditor's reliance is an objective one. Reasonableness requires the representations to be of such a character that a reasonably prudent person would rely on them. *In re Price* 48 B.R. 211, 213 (Bankr.S.D.Fla.1985) "Where a

bank relies on a stale financial statement and never inquires as to whether the statements actually reflect the debtor's current financial situation, the bank fails to show reasonable reliance." *In re Ogden* 119 BR 277, 279 (Bankr.MD.Fla. 1990), (*citing In re Benore* 108 BR. 797 (Bankr.M.D.Fla.1989).

In *Ogden* the statement was submitted nine months prior to the debtor's loan application; In *Schraw* it was seven months and In *Benore* it was four months.

The evidence also discloses that ALL-STATE had a vested interest in furnishing the bond i.e. procurement of the insurance business of corporations controlled by the Debtors generating an annual premium of about $15,000.00. As a result it could not reasonably rely on the financial statement furnished by the Debtors. *Camden National Bank v. Archangeli*, 2 C.B.2d 1209, 6 B.R. 50 (Bkrtcy.D.Me.1980) holding that a bank could not rely reasonably on the debtor's financial statements when the bank's own interests were to be served by consolidating the debtor's loans.

ALLSTATE has failed to establish actual or positive fraud on the part of the Debtors and reasonable reliance on the financial statement its complaint should be dismissed. An order to this effect is being entered pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure.